Good morning. Robert Biddell of WilmerHale on behalf of the appellant Kariya Kumho. Your Honors, I'd like to reserve three minutes for rebuttal. I need to watch the clock. I'll try to help you as well. Okay. Thank you. I think the fundamental issue for us this morning, there are a number of issues raised in the brief, but really the fundamental issue this morning is whether the 9X case really is the case that should be applied to the fact pattern that's been alleged here or whether there's some other body of antitrust law, some other principles of antitrust law that really apply to the fact pattern that we have in front of us here. As you know, Judge Chesney in the court below applied 9X. It was the exclusive case that she applied. She said that she thought 9X did apply to this fact pattern and therefore granted the defendant's 12B6 motion. Now I would like to take a minute and just tell you what I think the fact pattern is as it's alleged here and why I think that therefore 9X doesn't apply. The facts that are alleged and of course the court has to take them as if fact in all inferences to be drawn from those facts. The first important fact is that Flexus and KUMO, Korea KUMO, are horizontal competitors for the sale of a chemical in the United States that's used as an additive in making tires, mostly tires. It's a rubber additive, but it's used mostly in making tires. The primary purchasers in the United States of this chemical are tire manufacturers, of which there are only a handful. So there's a very constrained market in terms of the number of people who buy this 6PPD product, this chemical product to add into their tire manufacturers. Until KUMO entered the market in the United States, most 6PPD was bought from Flexus by tire manufacturers. Based on the most recent information that we had at the time of the operative complaint, which is now several years old because of the motion practice, Flexus had at least 55% of the market in the United States for the sale of 6PPD. So most purchases of 6PPD by tire manufacturers were purchased from Flexus. The Flexus sold 48 to 55% of the 6PPD? Depending on the year in question, as I said, some of that data is now old. The most recent data we had was from 2005, 2006. But, yes, the complaint has in it, and some of the papers have in it, a percentage that we think is higher than 55%, but it's at least 55%. I thought I read it was 48 to 55. It has changed over years as it has grown around. And the others that sold the 6PPD sold 41% of it. Is that right? There are other manufacturers that sell. Yes, Your Honor. So that would mean that, what, 96% was sold by people other than KUO. Yes, Your Honor, I think that's correct. I would have to do the calculation. But there are other sellers in the market, but the dominant seller is Flexus. So KUO sells between 11% to 4%. Again, depending on year, and it does fluctuate slightly. For these purposes, in 2005, Your Honor. Right. Now, if Flexus was successful in getting Michelin and Pirelli to stop buying from KUO, that would mean that the market had been damaged, or competition had been damaged by the loss of 11% to 4% of this product. Is that right? Well, Your Honor, I don't think the calculation. I mean, there may be an arithmetic calculation, but I don't think that's the way the competition law works in this respect. If you cut off a horizontal competitor by some coercive means, it's a violation of the antitrust laws. There are a number of cases. Okay, let's talk about that. Because what you're really alleging, I mean, if you go back, 9X is a no conspiracy case, correct? I believe so, yes. And it's a vertical with respect to replacement of a supplier. Yes. Okay. Why isn't the arrangement with the customers here tantamount to an exclusive arrangement? Well, first of all, it's not an exclusive arrangement because it's not done by contract. And I would say that if Flexus, let's look at it two different ways. If it were designated as an exclusive arrangement, in your view, would that be sufficient to allege competitive entry into the integration? Yes, Your Honor, and for the following reason. If you engage in, and let's assume it for the sake of your question, let's assume you engage in six parallel exclusive arrangements that tie up the entire or most of the entire customer base. That is going to have an anti-competitive effect. Now, whether that effect is a violation of the law, it turns on whether you're talking about a Section 1 violation or a Section 2 violation. 9X was applied by the judge first in the Section 1 context. And I think what Judge Chesney was getting at was because she thought 9X applied to any vertical relationship between two entities, a supplier and a manufacturer. That's not what 9X is about. And I would like to get back to what I think 9X is about. But to answer your question, your hypothetical question. Just to cut to the chase, I thought 9X was really the court making a determination that this isn't a group boycott and there's no per se under the arrangement that took place in 9X. The issue before the Supreme Court, and it's very clear when they describe the issue before they decide it, the question in 9X was was the per se boycott rule going to apply in the context that the Second Circuit applied it, which was this company changed suppliers for a bad reason. The reason happened to be a kickback, and the Supreme Court said the kickback might be a violation of state law, it might be something else. And the question for the court was if you change suppliers for a reason, a bad reason, is that going to invoke the per se boycott rule? The Second Circuit said it might. The Second Circuit couldn't decide whether it was a rule of reason. The Supreme Court said no. So move on from 9X to the situation here, and that is what is the antitrust injury? Can you summarize that in your view? Your Honor, I don't think this case is materially different than, let's say, a Clores kind of case. You have, in Clores you have. Well, that was a refusal to deal case. That was a boycott which led to refusal to deal. Horizontal. I'm not, it was vertical. I thought it was a horizontal conspiracy. It's vertical in the first instance, Your Honor, vertical in the first instance with a horizontal objective. Okay. You have a retailer who goes into a vertical relationship with a supplier, threatens the supplier, and says to the supplier, if you do business with my vertical and my horizontal competitor, I will stop doing business with you. So it starts out as a vertical arrangement with a horizontal objective. The defendant targeted the plaintiff by going through the supplier. A single, a single vertical act leading to a horizontal result. That fact pattern I think is closer to our situation than the 9X case, which is a voluntary change in suppliers for what the Supreme Court presumes is an improper reason, but not necessarily an anti-competitive reason, just an improper reason. So to address your question, to go back to the fundamental question, what is the anti-competitive harm when a horizontal competitor enlists the support of somebody else, a supplier, a manufacturer at another level of commerce, to target their direct horizontal competitor? The cases I think are uniform in saying that is antitrust injury, that is anti-competitive injury. And what's the targeting allegation? Where do I find that? What is it? The complaint says that we were targeted for adverse treatment to cut us off from selling to tire manufacturers. So in this, if you take the Clors paradigm and apply it here, what you have here is a manufacturer, Flexus, going into the customer base, going to each of the potential customers who, as I said, supply, are the primary customers for the purchase of this product in the United States, goes to the customer base and says, if you buy any of this chemical from our competitor, Kumo, we will stop supplying you and threaten them in that respect. And they cut them off from the supply that they needed for their manufacturing facilities. Now, to go back to a prior question you asked, which I think is now related, does it make a difference from the point of view of competitive injury, whether that was six or seven purely vertical threats aimed at a horizontal competitor, or whether it's considered one threat to the customer base aimed at a horizontal competitor? There may be an esoteric debate about whether we should treat that as per se or rule of reason for purposes of proof. But for purposes of pleading, when a horizontal competitor deprives its direct horizontal competitor of either supplies or material or access to the market, that is competitive injury. You're saying that the injury to competition exists even though, as I see the figures, 90 percent of the competitors still exist, even if they're successful in knocking you out. Your Honor, there are not only the Clores case where the Supreme Court says we are not disturbed by the fact that what the defendant was trying to do was knock out a single competitor, even a small competitor. What we're concerned about is the coercion. What we're concerned about is the suppression of the ability of that competitor to compete. And you'll find the same thing in the Ninth Circuit's PINHAS case, P-I-N-H-A-S, where a single doctor was deprived of privileges at a hospital. Doctors got together, a couple of doctors got together, went to the hospital, put pressure on the hospital to say don't give this doctor privileges. The Ninth Circuit said that act, that act of injuring that one doctor, was co-equal to competitive injury. There's a lot of other things you could talk about if you got to trial or summary judgment, a lot of facts you could talk about. But in terms of pleading, in terms of pleading, that's the essence of it. The reason 9X, the reason we think the court below erred is 9X is a voluntary switch of suppliers for a reason that the Supreme Court said is not an anti-competitive reason. It's just a bad reason. And the Supreme Court goes on to say in the text of the opinion, if we go down the path of turning switching of suppliers for a bad reason into a per se violation of antitrust laws, we'll get into cases about is nepotism a bad reason. I think they even use the word nepotism. If somebody switches because their uncle runs the competing company, is that going to be a per se violation of antitrust laws? That has nothing to do with what we're talking about here. The reason Flexus cut us off, cut us off from the manufacturers, was not for an extracurricular reason. It was for an anti-competitive purpose. What other purpose could there be to go into the tire manufacturer base and say buy only from us, not from them? When we are, Kumho is their direct horizontal competitor. That fact pattern is closer to this situation than 9X is close to this situation. There are a number of other boycott cases. McCready is another boycott case. Now, McCready's. The district court really, you're kind of staking your claim on the district court's view of 9X. I think the court cited that in passing for the quotation on how one might define competitive entry to the market as opposed to, you know, the old antitrust law, antitrust law protects competition, not competitors. And that's what I thought that the district court was doing with 9X here. So what the court goes on to say is that basically what you've alleged is potential injury to you, but not to the market because there's, you know, 40-plus percent of the market isn't even Flexus. And there's other competitors out there, and they're sustaining theirs. So is yours a barrier to entry argument? Your Honor, no. There is a barrier to entry here because you can't, you and I cannot go into the business of making six PPD because the cost of putting these plants up is extraordinarily expensive. But if you would hold a second on this thought. The notion that other people, think about Clores. Were there no other stores in the local community to sell clothing? But it was still a per se violation of the antitrust laws. You might want to save the rest of your time. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Dan Swanson, and I am representing the Flexus defendants here today. This case was dismissed after two judges concluded that this plaintiff could not state an antitrust claim despite trying five times over several years with tens of thousands of pages of discovery to guide them. The Court dismissed the case based on lack of antitrust injury, and we submit that that was absolutely the right decision and should be affirmed. The fact is that not one of Korea Kumho's five complaints below was ever held to have pled antitrust injury. And the essential reason why that was. Although I thought that the prior dismissals didn't hinge on that point. Well, the first dismissal did hinge on antitrust injury. The prior dismissals hinged on a completely different theory, which was horizontal boycott. Right. In the context of the horizontal boycott in the first dismissal of the Court, Judge Jenkins did indeed predicate the dismissal on lack of antitrust injury, Your Honor, if you look at that decision as headed lack of antitrust injury. The second dismissal hinged in part on lack of antitrust injury and hinged in part on the fact that there had been no predicate antitrust claim pled, either under Section 1 for lack of conspiracy or Section 2 for lack of pleading of a dangerous probability of monopolization. So as this Court has held in the past, absent an antitrust violation in the first place, there can be no antitrust injury. So the claims of Korea Kumho that this issue has never been raised before are, I think, somewhat hollow. Now, the reason we submit why Korea Kumho has not been able to and cannot plead antitrust injury is that this is a single competitor injury case. It is not a case of injury to competition. What it is in reality is an alleged tort case dressed up or masquerading as an antitrust case. And in fact, it had its origin in a commercial dispute between these parties. It was a patent dispute. It ripened into patent litigation that commenced in the year 2005. And that is the precipitating event that led to this lawsuit. Now, it's sorted out by this point, after five complaints, that the only conduct that the plaintiff challenges is conduct that occurred allegedly in or after late 2005. Now, it's noteworthy that Korea Kumho entered the market in 2001, and there is no claim that Flexus did anything to impede that entry. There is no claim that Flexus engaged in any anticompetitive conduct in the year, the two years, the three years, or the four years after that. Well, that doesn't give you a clean bill of health for life. No, it does not, although I spent a couple of years with the district court below earlier claims related to that period, and they were dismissed. So we ---- You know, the essential argument, as I hear it, is a coercion. In other words, they don't really have an exclusive arrangement, which might be one thing, which would then mean your clients could happily go along with their contract, but that your clients have basically threatened, without an actual agreement, have basically threatened the key customers that they have to do business with you or alternatively they can't, they shouldn't be doing business with Kumho. And that kind of a threat, which is a vertical upstream threat, is antitrust injury. Would you address that? And I think that that is a fair description of what they are alleging, Your Honor. And I would note that this ---- these alleged threats are in the context of patent litigation, and it is even pled outright, although, of course, below the plaintiff relinquished any claim of sham litigation and conceded that our patent claims were objectively based, as they had to in order to avoid bringing a sham claim. But the alleged threats, of course, are not enough to give rise to a conspiracy. They also have to plead under Twombly that the customers themselves communicated their agreement or acquiescence. There's nothing to that effect in this complaint. It's not a surprise because they bolted those vertical allegations on after four defective horizontal conspiracy claims. Let's assume, just for talking purposes, that the allegation and what are the name of those tire companies? There are two that they've mentioned, Pirelli and Michelin. And Michelin. Okay. So let's say that the allegation is that Flexus conspired with Michelin to ---- that Michelin could buy only from Flexus or others in the market, but not from Kumo. So now you have a conspiracy allegation that passes. Some muster, assuming that they can flesh that out. Would there be antitrust injury from that allegation if you could support that conspiracy allegation? And that would be not an exclusive arrangement, but it would be a one-company boycott. It would be an agreement with the customer that they won't buy from one company or they'll buy less from one company. It would be a single-company boycott, in effect. And that is where we say certainly that 9X comes into play. 9X actually does say that cases like Klor's are not apt. They are not relevant to analyzing the anticompetitive effects or the antitrust status of an allegation like that. I think, though, as, Your Honors, you observed yourself, one doesn't even need to rely on 9X for that proposition. It is an axiom. If anything is in antitrust law, that the law protects competition, not competitors. This Court has said repeatedly that the concern of the law is not injury to individuals or individual firms, mere injury to individual firms, but injury to the market itself. And the market, though, wouldn't that be enough to get you to be able to then prove what is the market and whether you have a competitive, whether the market has some competition, and then move into the summary judgment world? Well, if the question is could a plaintiff ever plead facts on that theory to state a claim for antitrust injury, the answer is yes. The specific question here is why not. And for that reason, I would say one can set 9X aside and look at other decisions of this circuit, look at the McGlinchey decision, look at Judge Thompson's decision on adaptive power solution, which was a boycott case as well, look at the decision in Less Shockley, another boycott case. All of those cases held that it's not enough to plead on a conclusory basis in a boycott case or some other case of a restraint on an individual competitor that that restraint automatically translates into injury to the market. What this Court has said multiple times is that what is required is the pleading of facts, facts in particular that show impact in the market, facts that demonstrate that in the market prices have risen as a result of the conduct, or that output  Obviously the market has been restricted. I actually had not gotten to ask them about whether, you know, there was an allegation on price or supply. Well, what you typically would see in an antitrust claim, is there a price allegation? No, there is not. And in fact, we pointed that out time after time. We pointed it out in our brief. Their response and their reply was, well, that's not the only way to prove antitrust injury. But they Why is there a supply allegation? There was one supply allegation that was dismissed with prejudice below that they don't appeal against. Judge Jenkins found that their allegation that we had deprived them of supply did not state antitrust injury. And then I guess I asked about access, although if they entered the market in 2001, they're in the market, so there's not an absolute barrier in terms of cost or prohibit some other normal barrier that you might see to access? That is correct, Your Honor. They entered in 2001. In fact, they plead in this complaint that their entry was successful. They were not impeded in that entry. They proceeded to accumulate market share. They attained a 4 percent market share. If you look at their complaint, what they specifically say is our claim is not that we were excluded, not that we're about to be excluded, not that we were barred from entry, but that we have stagnated. That's the term they used, stagnated at a 4 percent market share. But there is no fact pled in that complaint, no aspect of what is true of the structure of that market that would lead to a plausible inference that a stagnation of a 4 percent player is enough to adversely affect the market in general. Yes, I mean, there's been a lot of discovery and things thrown around. Is there in the record how the remaining portion of the market sorts out this 41 percent approximately? How is that spread out? It is in there. And of course, they did not plead market shares for the first four complaints. They had to be dragged kicking and screaming to bring in the market share figures after Judge Jenkins dismissed the fourth complaint. And so they finally showed up in the fifth complaint. And what they disclosed was that they allege, we have to take these allegations obviously as given, that Flexus had 41 to 48 percent. They allege they have 4 percent, which I apologize, I've got the numbers slightly off. They claim that Flexus has 48 to 55 percent, depending on the time frame. They claim they have 4 percent, and that leaves 41 to 48 percent for the remaining players in the market. Now there are lots of remaining players in the market, and that I submit is yet another reason why one doesn't see any allegation of anti-competitive effects in the market, why we don't see any of the tire companies joining in this claim. It's in this record that tire companies have had no problem suing these companies in the past if they perceive an antitrust issue. And they're not here today. They're not supporting those complaints. And that is because, as this complaint shows, the market is populated by major worldwide producers like Flexus, like Bayer, like Kentura, and what are called in the complaint low-cost entrants from East Europe and Asia. Korea Kumho is just another entrant from Asia, and the buyers have no lack of choices. And, in fact, the complaint has actually, the plaintiff has actually pled five times in five complaints that customers seek out the lowest cost 6 PPD, regardless of source. They're not tied down to any particular supplier. That's in paragraph 17 of the third amended complaint. And they have a world's set of choices. Well, they, yeah, they call themselves, I guess, a price-discounting competitor. Is that right? Well, they say that in the brief. It's not in the complaint. The only thing they say in the complaint is that they're a low-cost competitor. They say that the other entrants from Asia and Eastern Europe are low-cost competitors as well. They talk about our big investment in plant to bring our superior technology to bear into the market. We believe we're a low-cost competitor. Even if we somehow liberally construed the allegations to say that they're a price-discounting competitor, how would that change anything? It would not remedy the fact that they haven't alleged a single thing about market impact. It would not remedy the fact that they haven't been excluded, that they weren't able to enter. It wouldn't remedy the fact that they have a 4 percent market share already. It wouldn't remedy the fact that these are sophisticated big purchasers. None of them has complained. None of them has joined into these claims. It wouldn't remedy the fact that this is still fundamentally a one-competitor injury case that does not meet the requirements that this Court has set out in multiple opinions, not just what the Supreme Court said in 9X v. DISCON. And the notion that Clores is somehow relevant here is one that was laid to rest by the Supreme Court itself in the DISCON case, the 9X case, since if what Mr. Badal says is true, that case would have turned out differently. He says because we're a competitor of theirs, and we entered into these vertical agreements supposedly with customers, that that's enough to transform the case into one governed by a horizontal, per se, boycott case, Clores. The Supreme Court said no. It said even though in 9X the plaintiff there was a competitor of one of the boycotting parties, the Supreme Court said nonetheless that Clores and the other cases like it involve a horizontal agreement. That's what's missing here. That is what is not present. That's what the district court ruled out. That's what we have. Ginsburg. That's an agreement among competitors, correct? That's correct. And that's what's not here. And that is why they can't rely on all of those horizontal boycott cases. Agreements among competitors obviously take in a very large part of the market. They deprive customers of a wide swath of options. If we had what they had alleged earlier, a horizontal agreement with Bayer and Cantura, that would be a very large part of the market. That wouldn't leave half of the market to other players. It would leave a very tiny part of the market to other players. And that's why those horizontal boycott cases are ready to infer antitrust injury when it is pled, when the facts are pled. Here, there's no basis for inference from market structure, and there's no actual pleading of market impact. Now, the Supreme Court in Business Electronics also said something which contradicts the plaintiff's position here, which is you don't define something as horizontal based on its effects. You design something, you designate something as horizontal for antitrust purposes based on the fact that it's the product of a horizontal agreement. And again, that takes us back to what is missing here and why Korea Kumho cannot rely on those horizontal per se boycott cases.  The attempt to amend the case did not supply any facts that would change any of this. All the plaintiff was trying to do was to allege the continuation of the alleged boycott. They didn't manage to inject any new facts, as Judge Chesney observed. So in light, I'd say, of the very recent Gilly case of this circuit, denial of leave to amend was perfectly within the discretion of the district court. Thank you. You have a minute, but it's hard to say anything in a minute. Why don't we add another minute to that? Very briefly. First of all, I would like to distinguish these kinds of arguments about exclusive dealing arrangements. Somebody with a 55 percent market share who engages in a bunch of exclusive dealing arrangements may be violating Section 2 of the Sherman Act. It could create a dangerous probability of success. What we're focusing on is boycott. And contrary to what Mr. Swanson says, there are a number of cases where the attacking a single competitor to keep it out of the market is a boycott under Section 1 of the Sherman Act. In Clores, the Supreme Court says boycotts are not to be tolerated merely because the victim is just one merchant whose business is so small that his disruption makes little difference to the economy, end quote. In Shockley, the circuit, the Ninth Circuit said there is a convergence, depending on the fact pattern, there's a convergence between injury to a single competitor and injury to competition. As I said earlier in the Pinas case, the Ninth Circuit said, quote, injury to a competitor can be probative of injury to competition. Are those? Well, the Clores is a horizontal boycott, correct? All right. Let me address that because there's been a number of statements here about what's vertical and what's horizontal, and that's being mixed with the question of is there a conspiracy at some level that we can be treated as horizontal. Take a look at the boycott cases that have been cited by actually by both parties, but the boycott cases, and you'll see that all of them have vertical elements with a horizontal objective. The question is not vertical versus horizontal. The question is conspiracy. Well, no. The courts have made quite clear there are some differences in types and per se. Yes, Your Honor. So it does matter. It matters at proof. It matters whether you can approve a per se violation which does not require certain levels of proof or rule of reason which does. It does not go to the question of the adequacy of the pleading. McCready, a horizontal, a vertical conspiracy aimed at a horizontal end. Fashion Originator's Guild, a vertical conspiracy aimed at a horizontal end. Clores, a vertical conspiracy aimed at a horizontal end. Park Davis, a vertical conspiracy aimed at a horizontal end. In this circuit, Penis, a vertical conspiracy aimed at a horizontal end. In the Eleventh Circuit, Toys R Us, a vertical conspiracy aimed at a horizontal end. In the Third Circuit, Mally Duff, a vertical conspiracy aimed at a horizontal end. In the Mally Duff case, the Third Circuit says the fact that it has a horizontal end makes it per se. We're not arguing here about per se versus rule of reason. As a matter of evidence, we're talking about is there enough ledge in this complaint that Flexus enlisted the customer base to cut us off? If they did, it's a boycott. Whether it's going to be proved under the rule of reason or per se is for summary judgment or trial, but not for pleading. Thank you. Thank you, Your Honor. I appreciate your time. Thank you. The case of Correa-Cumo v. Flexus is submitted. I want to thank both counsel for argument and for the briefing.
judges: Hall, Thompson, McKeown